**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Carey M. Baca, | ) | No. CV-10-00885-PHX-GMS |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Steven R. Callahan, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Pending before the Court are the following motions: (1) Motion to Dismiss (Doc. 50) filed by Defendants Shelly Baker, Cindie Douglas, La Paz County, Sharon Schuler, and Patricia L. Wall ("County Defendants"); (2) Motion to Strike Affirmative Defenses (Doc. 54) filed by Plaintiff Carey Baca; (3) Motion to Strike Answer (Doc. 56) filed by Baca; (4) Motion to Dismiss (Doc. 61) filed by Defendant State Title Agency, Inc. ("STA"); (5) Motion to Strike (Doc. 63) filed by Baca; (6) Motion to Dismiss (Doc. 72) filed by the State of Arizona; (7) Motion for Leave to Amend Second Amended Complaint ("SAC") (Doc. 81) filed by Baca; and (8) Motion to Dismiss (Doc. 82) filed by James Shubin. For the reasons stated herein, the Court grants County Defendants' Motion to Dismiss (Doc. 50) and the State of Arizona's Motion to Dismiss (Doc. 72). The Court dismisses all other claims against all other Defendants for failure to state a claim, with the exception of a negligence claim

against Defendant Hayes.[1] The Court denies Plaintiff's Motion for Leave to Amend (Doc. 81). The Court denies as moot all other pending motions (Doc. 54; 56; 61; 63; and 82).

## BACKGROUND

On April 21, 2010, Plaintiff Carey Baca filed a pro se Complaint and an Application to Proceed *in forma pauperis*. (Doc. 1; 4). On May 5, 2010, the Court granted Plaintiff's application and dismissed his Complaint for failing to comply with Federal Rule of Civil Procedure 8. (Doc. 6). On June 4, 2010, Plaintiff filed his First Amended Complaint ("FAC"). (Doc. 7). In an order dated July 12, 2010, the Court dismissed Plaintiff's FAC for failure to state a claim pursuant to Rule 12(b)(6). (Doc. 8). In that Order, the Court explained that Baca's FAC failed to "clarify each Defendant's role in the underlying transactions" or "identify which of [the] claims apply to which Defendants." (*Id.*). The Court warned Plaintiff that his "general allegations are insufficient to put *each Defendant* on notice of the particular claims against it." (*Id.*). The Court gave Plaintiff an additional 30 days in which to file his SAC to cure the deficiencies identified in that Order. (Doc. 13). On August 11, 2010, Plaintiff filed his SAC. (*Id.*).

Plaintiff has made a few changes to his lengthy complaint, including adding a summary section. (Doc. 13). Nevertheless, for the most part, he still has not identified the nature of the claims against each Defendant or the factual bases for them with sufficient specificity. The Complaint attempts to state various claims arising out of the purchase of an investment property in Parker, Arizona, located in La Paz County (the "Property"). The

---

[1] Although Plaintiff has stated a plausible negligence claim against Debe Hayes, it appears that Defendant Hayes has never been properly served. *See* Doc. 38 (Summons Returned Unexecuted by Carey M. Baca as to Debe Hayes); Doc. 39 (Proof of service shows Plaintiff mailed the summons and SAC to Defendant Hayes, who appears to be a resident of Arizona, via certified mail and without a return receipt.). Under the Federal Rules, a plaintiff may either serve an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made", FED. R. CIV. P. 4(e)(1), or in accordance with Rule 4(e)(2). Neither the Arizona rules nor the Federal Rules permit a plaintiff to serve an in-state individual by certified mail. Accordingly, the Court will issue an Order to Show Cause why the action against Defendant Hayes should not be dismissed.

Complaint alleges that Baca, his brother Keith Baca, and the Callahans entered into an oral property development agreement, which involved re-zoning a portion of the property for the purpose of constructing residential condominiums. The parties allegedly agreed to share the profits from the sale of the completed homes. Plaintiff contends that in 2006, he and his brother came to an agreement[2] with the Callahans that the Bacas would buy out the Callahans' interest in the property. Plaintiff's SAC attempts to raise claims related to the alleged partnership between these parties, as well as the "Joint Venture Condo Project," that was the subject of the 2006 agreement.

## I.    Statutory Screening of *In Forma Pauperis* Complaints

### A.    Legal Standard

The Court is required to screen complaints brought *in forma pauperis*. 28 U.S.C. § 1915(e)(2). The Court "shall dismiss the case *at any time*" if the plaintiff's complaint raises claims that are frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* (emphasis added).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states

---

[2] This appears to be the August 2006 stipulated judgment (Doc. 15, Ex. O), to which the Bacas, Callahans and SRC Sundance LLC are a party.

a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Courts must "continue to construe *pro se* filings liberally", *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), and allow a *pro se* litigant to amend a complaint before dismissal of the action if the Court determines that a pleading could be cured by the allegation of other facts, *see Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc). However, even "a liberal interpretation of a . . . complaint may not supply [the] essential elements of [a] claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks omitted).

## B. County Defendants

The only claim that the Court could decipher against County Defendants is of civil conspiracy with intent to defraud–specifically to deprive Plaintiff of his right to property–brought under 42 U.S.C. § 1983.[3] County Defendants filed a 12(b)(6) motion (Doc. 50), making a number of arguments from qualified immunity to Plaintiff's failure to "state with specificity the facts that . . . show the existence and scope of the alleged conspiracy." (*Id.* (quoting *Slotnik v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977))). For the reasons stated below, the Court grants County Defendants' motion.

---

[3]In his Response to County Defendants' Motion to Dismiss, Plaintiff quotes other sections of his Complaint to show that he has raised other claims in addition to civil conspiracy. (Doc. 59). For instance, he quotes the following language: "County Officers exercised power by the virtue of State law and Loyal Oath, by acting in concert with others knowingly and intentional doing wrongful acts with negligence by interference of absolute rights to property. Violating Plaintiffs Civil Rights under State Public Records Act (1909)." It is unclear what this means, and in any event, this language does not state a claim for relief. Plaintiff's citation to various statutes and statements that he alleges have been violated by Defendants amounts to "mere conclusory statements" that do not meet the Rule 8 standard. To the extent that Plaintiff raises new arguments in his Response, such as that the County is improperly taxing him for land he cannot own because it is a riverbed owned by the State, the Court cannot consider arguments not raised in the Complaint. *See Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 n.5 (9th Cir. 1987) (Ninth Circuit could not consider a claim raised only in a response to the defendant's motion for summary judgment, but never as a cause of action.).

### i. 42 U.S.C. § 1983[4]

Plaintiff's SAC states that the County Defendants

> exercised power . . . by acting in concert with others knowingly and intention [sic] doing wrongful acts with negligence by interference of absolute rights to property. Violating Plaintiffs Civil Rights under State Public Records Act (1909). and in conspiracy to enable others to commit the same illegal acts by individually using their position of authority by entering recorded into computerized system for permanent public record. Tampering with Recorded Documents, by changing, replacing, adding or removing. . . .

(Doc. 13). Plaintiff asserts that County Defendants conspired to violate the "State Public Records Act (1909)"; however, to state a valid conspiracy claim under § 1983, Plaintiff must assert that Defendants agreed to violate his constitutional rights. *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). A violation of a state public records act does not constitute a violation of Plaintiff's federal constitutional rights.

Plaintiff also identifies an underlying violation of his constitutional rights based on section 1, clause 1 of the Fourteenth Amendment.[5] In alleging a civil conspiracy, "a plaintiff must plead, at a minimum, the basic elements of a civil conspiracy if the object of the conspiracy is fraudulent." *Wasco Prods., Inc. v. Sw. Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006); *see also id.* at 990–91 (quoting with approval the Tenth Circuit's holding in *Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004) that "alleg[ations] [of] specific facts showing an agreement and concerted action" are required to allege a civil conspiracy claim). Moreover, individual liability under § 1983 "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

---

[4] To the extent that Plaintiff asserts violations of state law as underlying bases for a § 1983 claim, the claim is dismissed. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979))).

[5] Section 1, clause 1 of the Fourteenth Amendment states: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." The Court assumes that Plaintiff meant to refer to the following portion of section 1: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

1989). Plaintiff's SAC fails to allege facts as to any specific individual County Defendant that would establish that these individuals formed some agreement to deprive Plaintiff of a constitutional right to property. Plaintiff states that Defendant Cindie Douglas certified the "Notice of Pendency Action" as three pages, and then when Plaintiff returned to get another copy, it was certified as four pages in length. (Doc. 13). The SAC alleges that Cindie Douglas and Shelly Baker failed to correct information that he believed was incorrectly entered into the computer. He also claims that pages were added to other documents on file at the County Recorders Office. These allegations alone do not state a § 1983 civil conspiracy claim. Accordingly, Plaintiff's § 1983 claim against the individual County Defendants in their official capacity is dismissed.

To the extent that Plaintiff's SAC asserts that the individual County Defendants are personally liable for conspiring to violate his property rights under the Fourteenth Amendment, this claim also fails. "In § 1983 actions, the doctrine of qualified immunity protects [] officials from personal liability in their *individual* capacities for their official conduct so long as that conduct is objectively reasonable and does not violate clearly-established federal rights." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir. 2010). "Qualified immunity is necessary to 'protect[] the public from unwarranted timidity on the part of public officials' and to avoid 'dampen[ing] the ardour of all but the most resolute, or the most irresponsible.'" *Id.* When determining whether a government official is entitled to qualified immunity, the Court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the defendant's alleged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Again, because Plaintiff has failed to allege specific facts regarding any of the individual County Defendants that would support a conclusion that they violated clearly-established federal rights, these Defendants are entitled to qualified immunity.

To the extent that Plaintiff's SAC asserts a § 1983 claim against La Paz County, the claim must be dismissed. "[A] municipality can be found liable under [section] 1983 only

where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). Liability may attach against a municipality in two ways. First, the municipality itself may violate an individual's rights through a policy, ordinance, regulation or other formal decision. *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). Plaintiff has not alleged the existence of a County policy or custom that would support liability under § 1983. Under limited circumstances, a municipality also may be liable for a "constitutional tort committed by its employee, even though it did not direct the employee to commit the tort." *Id.* at 1185. Because Plaintiff has not alleged sufficient facts to support a claim that "through its *omissions* the [County] is responsible for a constitutional violation committed by one of its employees," Plaintiff's § 1983 claim against the County is dismissed.

### ii. Notice of Claim

To the extent that Plaintiff's civil conspiracy claim is interpreted as a state law claim, Plaintiff failed to comply with Arizona's notice of claim statute, *see* A.R.S. § 12-821.01. Under Arizona's notice of claim statute, "[p]ersons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A) (2011). The statute "permits an action against a public entity to proceed only if a claimant files a notice of claim that includes (1) facts sufficient to permit the public entity to understand the basis upon which liability is claimed, (2) a specific amount for which the claim can be settled, and (3) the facts supporting the amount claimed." *Backus v. State*, 220 Ariz. 101, 104, 203 P.3d 499, 502 (2009). As County Defendants note in their Reply, Plaintiff does not address their argument that he failed to comply with the notice of claim statute. (Doc. 59; 65). Nowhere does Baca state that he timely filed a notice of claim before initiating this action against County Defendants. "Compliance with the notice provision of § 12-821.01(A) is a 'mandatory' and 'essential' prerequisite to such an action . . . ." *Harris*

*v. Cochise Health Sys.*, 215 Ariz. 344, 351, 160 P.3d 223, 230 (App. 2007) (quoting *Salerno v. Espinoza*, 210 Ariz. 586, 588, 115 P.3d 626, 628 (App. 2005)). Thus, Baca's failure "'bars *any* claim'" against the County or its employees. *Id.* (quoting *Salerno*, 210 Ariz. at 588, 115 P.3d at 628) (internal quotations omitted).

### iii. Civil Conspiracy–Individual County Defendants

As stated above, the Court must dismiss a claim under 28 U.S.C. § 1915(e)(2) if Plaintiff fails to state a claim upon which relief may be granted. "[L]iability for civil conspiracy requires that two or more individuals agree and thereupon accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (internal quotation marks and citation omitted). "The existence of a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. However, a plaintiff must allege specific facts which support the inference of an agreement." *S. Union Co. v. Sw. Gas Corp.*, 165 F.Supp.2d. 1010, 1021 (D. Ariz. 2001) (internal quotation marks and citation omitted).

Plaintiff's SAC makes statements such as "[t]his case involves, Conspiracy with Intent to Defraud" and "Conspiracy in of [sic] falsifying documents relating to deeds evidencing a transfer of title" and then lists a Defendant or Defendants after the vague, conclusory statements. (Doc. 13). The SAC lists actions, such as "Tampering with Recorded Documents by changing, replacing, adding or removing. Offering copies of recorded documents for a fee and certifying with the knowledge as to their authenticity and then giving those false documents to Plaintiff." (*Id.*). However, a list of such actions does not allow the Court to infer an agreement to commit some underlying tort. Plaintiff's SAC merely offers legal conclusions that the individual County Defendants engaged in a civil conspiracy to deprive him of his property rights. Accordingly, Plaintiff's conspiracy claim under state law is dismissed for failure to state a claim.

### C. State of Arizona

In his SAC, Plaintiff named the State of Arizona as a defendant. (Doc. 13). The State filed a Motion to Dismiss (Doc. 72), asserting *inter alia* that it has not waived Eleventh Amendment immunity. "Under the Eleventh Amendment, a state is immune from suit under state or federal law by private parties in federal court absent a valid abrogation of that immunity or an express waiver by the state." *In re Mitchell*, 209 F.3d 1111, 1115–16 (9th Cir. 2000) (footnote omitted), *overruled in part on other grounds by* Kimel v. Fla. Bd. of Regents, 528 U.S. 62 (2000). States retain their immunity against suits by private parties under the Eleventh Amendment, "regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Arizona has not manifested the intention to waive its sovereign immunity under the Eleventh Amendment from suit in federal court, nor has there been a valid abrogation of that immunity. Further, to the extent that Plaintiff is alleging a claim pursuant to § 1983, the Supreme Court has held that the State is not a "person" suable under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991). Accordingly, any claims asserted in the SAC against the State are dismissed.

### D. State Title Agency

Plaintiff's SAC makes the following claim against State Title Agency: "James Shubin with State Title Agency as Escrow Agent conspired intentionally and failed disclose [sic] information as to the Sale of Property. If State Title Agency had conducted a valid Title Search of the Property they would have knowledge of the encumbrances on the property neither seller or State Title Agency disclosed." (Doc. 13). It is unclear if Plaintiff believes Shubin and State Title Agency conspired because both had the opportunity to disclose certain information about the property to him, but neither did for whatever reason. But, in any event, Plaintiff has failed to allege sufficiently specific facts to support an allegation of conspiracy. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient."). Furthermore, Plaintiff did not assert a claim regarding State Title Agency's alleged failure to disclose encumbrances on the property after conducting the title search. Accordingly, Plaintiff's claim of civil

conspiracy against State Title Agency is dismissed and Defendant is terminated from this action.

### E.    Trespass of Property & Negligence

Plaintiff attempts to raise a trespass of property claim against the Callahans, James Shubin, and SRC Sundance, LLP,[6] stating the following: "[Defendants] have gone by pure unwitting misadventure beyond the limits of their own dominion: Either by knowing they are not within legal right, or by knowing there is a doubt as to their right, but, but for causes deemed by them sufficient." (Doc. 13). In a similar fashion, Plaintiff attempts to raise a negligence claim against Defendants Shubin and SRC Sundance LLC, stating the following: "[D]efendants [have] for their own purposes done acts, brought other people . . . into and taken upon themselves the conduct of an operation, which a prudent man in their place would know to be attended with certain risks . . . ." (*Id.*). *Iqbal* requires a claim to plead sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."129 S.Ct. at 1949. Plaintiff fails to include any factual content specific to the abovementioned Defendants that would allow the Court to reasonably infer that Defendants are liable for these torts. Accordingly, these claims are dismissed.

### F.    James Shubin and Copper Canyon Enterprises, Inc.

The SAC alleges that Shubin and Copper Canyon, who sold property located in Parker, Arizona to Plaintiff, did not convey good title. (Doc. 13). Plaintiff asserts that Shubin "conspired intentionally and failed [to] disclose information as to the Sale of Property."(*Id.*). Simply stating that there was a conspiracy involving James Shubin, and possibly Copper Canyon, does not support a claim of civil conspiracy. *See Karim-Panahi*, 839 F.2d at 626 ("A mere allegation of conspiracy without factual specificity is insufficient."). As stated above, Plaintiff must "allege specific facts which support the inference of an agreement." *S. Union Co.*, 165 F.Supp.2d. at 1021. At most, Plaintiff alleges that neither Defendant Shubin nor

---

[6] Because the Callahans and SRC Sundance, together with Baca, are parties to a stipulated judgment, discussed in section G, Plaintiff may not bring these claims against either the Callahans or SRC Sundance. (Doc. 15, Ex. O).

State Title Agency disclosed certain information to Plaintiff, and somehow that should be interpreted as the two parties conspired to conceal that information. Plaintiff's SAC fails to state a claim of civil conspiracy against James Shubin or Copper Canyon, and therefore, the Court dismisses this claim.

### G. Callahans

Baca has raised a number of tort claims against the Callahans, including negligence, trespass of property, breach of fiduciary duty, intentional infliction of emotional distress, and civil conspiracy. (Doc. 13). However, Baca acknowledges that he entered into a stipulated judgment in state court with the Callahans in August 2006. (Doc. 15, Ex. O). The subject of that agreement is the Parker property, which also forms the basis of this action. The judgment states that should the Callahans default in payment or performance, Baca "may pursue . . . collection remedies for the amount due . . . ." (*Id.*). However, the judgment also explicitly states that, by signing the agreement, Plaintiff has "release[d] and discharge[d] the Callahans and their respective corporations, partnerships, affiliates, subsidiaries, officers, directors, partners, agents, employees, successors, assigns, attorneys and representatives . . . *from any and all liability*, claims or causes of action, liquidated or unliquidated, whether arising under tort, contract or any other legal theory, law or statute, . . . that [Plaintiff may have] against [the Callahans], which are *in any way connected with or related to the Property, and loans between the Callahans and the Bacas, and any alleged partnership between the Bacas and the Callahans related to the Property*." (*Id.*). Because Plaintiff's tort claims against the Callahans pertain to the alleged partnership between the parties related to the Parker property, which was the subject of the stipulated judgment, all claims against the Callahans must be dismissed.

### H. Debe Hayes

Plaintiff's SAC alleges that Defendant Hayes notarized a deed, which contained Plaintiff's signature, without Plaintiff present. (Doc. 13). Assuming these facts to be true, Plaintiff has stated a negligence claim against Hayes. "Notaries public must conform their conduct to a defined statutory duty of care. *See* A.R.S. §§ 33-503 *et seq.* This statute requires,

first that the person whose signature is being acknowledged have 'appeared' before the notary and 'acknowledged he executed the instrument.' A.R.S. § 33-503(1). It also requires that the notary either have 'known' the person whose signature is being acknowledged 'or that the [notary have] *satisfactory evidence* that the person acknowledging was the person described in and who executed the instrument.' A.R.S. § 33-503(2)." *City Consumer Servs., Inc. v. Metcalf*, 161 Ariz. 1, 4, 775 P.2d 1065, 1068 (1989). Failure to take these steps, if true, would establish a breach of Hayes' duty of care. Accordingly, Plaintiff has stated a negligence claim against Defendant Hayes.

The Court is unable to decipher claims against JoAnne Rosnagle, Chris Schluter or Diamond Bay Investments. The Court previously warned Plaintiff that he needed to clarify each Defendant's role in the underlying transactions and identify which claims apply to which Defendants. (Doc. 8). Defendant Rosnagle is briefly mentioned in paragraph 1 as an escrow agent for State Title Agency; however, the SAC fails to mention any additional facts related to her. (Doc. 13). It remains unclear to the Court what claims, if any, Plaintiff is asserting against Defendant Rosnagle. Accordingly, she is terminated from this action. Regarding Chris Schluter, who appears to be the President of Diamond Bay Investments, Plaintiff states that he "failed to disclose to plaintiff that he had previously attempted to obtain funding for the" Callahans. (*Id.*). The only other mention of Defendant Schluter and Diamond Bay Investments is in reference to the Bacas' attempt to obtain funding for their condo project. Plaintiff has failed to clarify what claims he is asserting against these two Defendants, and therefore, the Court terminates both from this action.

The remainder of Plaintiff's SAC restates verbatim the allegations contained in his FAC or is irrelevant to his case. (Doc. 7; Doc. 13). Plaintiff's forty-one page SAC is confusing, verbose, conclusory, and otherwise fails to state a claim upon which relief can be granted.[7] Although the Court takes into consideration the fact that Plaintiff is a pro se litigant,

_____

[7] Plaintiff makes only broad statements about "Defendants" with regard to his intentional interference with business advantage claim. *See* Doc. 13 ("Defendants and each

he has had three opportunities to properly file a complaint and generally has been unable to allege facts that state a claim upon which relief could be granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that "repeated failure to cure deficiencies by amendments previously allowed" is grounds for denying leave for a Plaintiff to amend his complaint); *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (holding that the Court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint"). Reading Plaintiff's SAC as broadly as possible, he has only stated one plausible claim for relief–a negligence claim against Defendant Hayes. Plaintiff's SAC is otherwise dismissed with prejudice.

## CONCLUSION

The Court grants County Defendants' Motion to Dismiss (Doc. 50) and the State of Arizona's Motion to Dismiss (Doc. 72). Pursuant to 28 U.S.C. § 1915(e)(2), the Court dismisses all claims against Defendants Rosnagle, Shubin, Copper Canyon Enterprises, Schluter, and Diamond Bay Investments. The Court also dismisses all claims against the Callahans and SRC Sundance both for failure to state a claim as well as on the basis of the stipulated judgment, which states that Baca has released these Defendants from all claims related to the  Parker property. The only claim that remains in this action is the negligence claim against Debe Hayes. However, for the reasons stated in footnote 1, Plaintiff must establish why the action against Defendant Hayes should not be dismissed for failure to serve.

**IT IS THEREFORE ORDERED** that

(1) County Defendants' Motion to Dismiss (Doc. 50) is **GRANTED**;

(2) the State of Arizona's Motion to Dismiss (Doc. 72) is **GRANTED;**

(3) pursuant to 28 U.S.C. § 1915(e)(2) that Plaintiff's Second Amended Complaint

---

of them consistently and intentionally, acted and refused to act in a manner intended to harm the business and to frustrate its purposes."). Because Plaintiff's SAC does not provide sufficient facts to state a plausible claim against any specific defendant, this claim is dismissed.

(Doc. 13) is **DISMISSED WITH PREJUDICE** as to the claims against the following Defendants: Rosnagle, Shubin, Copper Canyon Enterprises, Schluter, Diamond Bay Investments, Steven Callahan, Lisa Callahan, and SRC Sundance. The only remaining claim is a negligence claim against Defendant Hayes.

(4) Plaintiff's Motion for Leave to Amend Complaint (Doc. 81) is **DENIED.** Plaintiff is not permitted to amend his complaint again.

**IT IS FURTHER ORDERED** that all other pending motions in this action (Doc. 54; 56; 61; 63; and 82) are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff must show good cause as to why Defendant Debe Hayes should not be dismissed for failure to establish proof of service of the Summons and Complaint pursuant to 4(l), Federal Rules of Civil Procedure, on or before **September 8, 2011**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to dismiss Defendant Debe Hayes and terminate this action, without further notice, if Plaintiff fails to comply with this Order.

DATED this 25th day of August, 2011.

_G. Murray Snow_
G. Murray Snow
United States District Judge